IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMALIA C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-cv-01212 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Amalia C. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §1383(c)(3). For the reasons stated herein, Claimant's motion to reverse or remand the decision of the Commissioner, (Dckt. #13), is denied and the Commissioner's motion for summary judgment, (Dckt. #14), is granted.

I.  **BACKGROUND**

   A.  **Procedural History**

On May 14, 2018, Claimant (then thirty years old) filed applications for SSI, alleging disability dating back to January 1, 2015, due to limitations from a learning disability,

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has been substituted as the named defendant. Fed.R.Civ.P. 25(d).

comprehension difficulties, depression, and type 2 diabetes. (Administrative Record ("R.") 354).[2] Her claim was denied initially and upon reconsideration. (R. 17). Claimant filed a timely request for a hearing, which was held on May 14, 2020, before Administrative Law Judge ("ALJ") Margaret Carey. (R. 106-44). On September 23, 2020, the ALJ issued a written decision denying Claimant's application for benefits. (R. 14-37). The Appeals Council denied review on January 7, 2021, (R. 1-8), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

   **B.**  **The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

---

[2] Claimant has applied for disability three times in the past – on June 23, 2005; February 25, 2016; and July 13, 2017. (R. 173). Some of the evidence in her file, such as an early consultative examination, was collected in connection with these prior applications.

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled, and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), or her capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, she is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

### C. The Evidence Presented to the ALJ

Again, Claimant seeks benefits due to limitations from a learning disability, comprehension difficulties, depression, and type 2 diabetes. (R. 354). Because Claimant's

arguments on appeal focus only on her mental limitations, the Court narrows its review of the evidence accordingly.

### 1. Evidence from Claimant's Medical Record

Claimant has a history of depression. (R. 453). On June 8, 2017, she reported symptoms of decreased concentration, dysphoric mood, sleep disturbance, nervousness, and anxiety to her primary care physician, Sukhveer Wahi, MD. (R. 454). On November 20, 2017, Claimant saw social worker Diane Sullivan, LCSW, to ask that she complete a questionnaire for Claimant's disability application. (R. 457). Ms. Sullivan informed Claimant that she could not complete the questionnaire because Claimant had not visited the behavioral health clinic since February and the majority of her prior conversations with the clinic had revolved around her son. (*Id.*). Ms. Sullivan further informed Claimant that if she wanted the clinic to complete the form, she would have to return at least monthly for depression treatment. (*Id.*).

At a May 23, 2018 primary care appointment, Dr. Wahi noted that Claimant again reported decreased concentration, dysphoric mood, and sleep disturbance. (R. 466). She was anxious, but had no behavioral problems and was oriented to person, place, and time. (*Id.*). Claimant did present as sad and tearful. (*Id.*). At a July 2, 2018 appointment, LCSW Sullivan noted that Claimant had failed to come to monthly appointments for depression. (R. 468). Ms. Sullivan noted that Claimant appeared "very needy and helpless" and depended on her mother to arrange appointments and transportation. (*Id.*). Ms. Sullivan noted that she could not diagnose Claimant until she returned on a regular basis. (*Id.*). On July 27, 2018, Claimant reported lack of energy, excessive sleep, fluctuating appetite, feelings of hopelessness and helplessness, poor concentration and focus, and lack of exercise. (R. 480). Ms. Sullivan diagnosed Claimant with a "moderate episode of major depression." (R. 481).

On December 23, 2019, Claimant established care at the Chicago Heights Community Health Center. (R. 512). She asked for a refill of her antidepressants and for a psychiatry referral. (R. 514). Although Claimant was scheduled to meet with the Center's psychiatrist on February 6, 2020, she was instead sent to the emergency department due to her blood pressure, and the appointment had to be rescheduled. (R. 509).

### 2. Consultative Examinations

Norton Knopf, PhD, performed a psychological consultative examination of Claimant on August 30, 2005, when Claimant was seventeen years old. Claimant presented as alert with a normal speech quality, calm mood, appropriate affect, logical and coherent thought processes, and unremarkable thought content. (R. 440). She reported severe feelings of depression, characterized by guilt, sleep disturbance, fatigue, and poor concentration. (*Id.*). Dr. Knopf noted that Claimant's attention and concentration skills were borderline and her intellectual ability was estimated to be in the borderline range. (R. 441). She could do simple addition, subtraction, multiplication, and division. (*Id.*). She reported spending her free time reading. (R. 442). Her demeanor was described as "cooperative, anxious, and immature." (R. 443). Testing revealed a full-scale IQ score of 73. (R. 444).

William Skoubis, PsyD, performed a second psychological consultative examination of Claimant on August 6, 2018, when Claimant was thirty years old. Claimant presented with a calm mood and an appropriate affect. (R. 486). Claimant reported over-eating and frequent crying. (R. 487). She showed no signs of anxiety, depression, or formal thought disorder, but she "was extremely slow in giving responses" to mental capacity questions. (*Id.*). Dr. Skoubis noted that it "was unclear whether this was an ability reason, a slow response style, or whether this was a less than cooperative response style." (*Id.*). He noted that Claimant was less

5

cooperative during questioning than she had been when she was sixteen. (R. 487). He found that given Claimant's error in calculation skills and difficulty with immediate memory "she might not be able to manage funds on her own behalf." (*Id.*).

### 3. State Agency Consultant Findings

State agency consultant David Voss, PhD, reviewed Claimant's file on September 7, 2018. He found that Claimant had a moderate limitation in each functional category. (R. 177). More specifically, he indicated that Claimant was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; interact appropriately with the general public; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (R. 181-83).

Regarding Claimant's concentration and persistence limitations, Dr. Voss noted that Claimant could maintain the concentration and persistence necessary to carry out simple tasks; complete tasks where speed of performance was not essential; and complete tasks independently. (R. 182). He clarified, however, that Claimant "would require some additional supervision beyond what is commonly provided in a typical work setting." (*Id.*). Overall, he concluded that Claimant "should be able to meet the basic mental demands of work-like activity that involves remembering simple, [one- to two-step] instructions and carrying out duties on a sustained basis that involve repetitive tasks requiring little judgment or decision-making in a competitive work environment with limited social demands." (R. 183).

State agency psychological consultant Russell Phillips reviewed Claimant's file on January 18, 2019. Although Dr. Phillips, like Dr. Voss, found Claimant moderately limited in each overall functional category, (R. 194), he deemed her limitation in understanding, remembering, and carrying out detailed tasks to be *marked*, rather than moderate, (R. 196). Dr. Phillips also prescribed different restrictions to accommodate Claimant's concentration and persistence limitations, finding only that she could "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision," but could not do so for detailed or complex tasks. (R. 197).

### 4. Evidence from Claimant's Testimony

Claimant appeared with attorney Theodore Glass, at the May 14, 2020 hearing. (R. 108). At the hearing, the ALJ granted Mr. Glass' request that the record be kept open for 30 days to secure two outstanding sources that were also noted in a May 4, 2020 letter to the ALJ in advance of the hearing: school records (requested February 4, 2020) and mental health treatment records for physical and/or mental conditions from July 28, 2018 to present (requested on February 4, 2020). (R. 111, 143, 432-33). Claimant testified during the hearing that she met with her therapist twice a month, but that due to the pandemic, the appointments were over the phone. (R. 134-35).

On August 19, 2020, following the hearing, the ALJ granted Claimant's counsel's request for an extension of time to August 28, 2020 to submit additional evidence, and the ALJ indicated that if the additional evidence was not received, she would issue a decision without it. (R. 435). On August 21, 2020, Claimant's counsel's office again requested to keep the record open for an additional twenty-one days to allow sufficient time to secure the school records. (R. 436). On September 4, 2020, a paralegal for Claimant's counsel wrote to the ALJ that the record was left

open to obtain school records, the school records were submitted on September 2, 2020, and additionally, that "[a]ll medical records are in and the record is complete." (R. 437).

### 5. Evidence from Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") to consider an individual of Claimant's age, education, and experience, who could perform work at all exertional levels; who retained the capacity to understand, remember, concentrate, persist and perform simple, routine, repetitive tasks in a low-stress environment, defined as having few, if any, simple work-related decisions and few, if any, routine changes in the work setting; who could have no interaction with the public, only occasional routine interaction with supervisors and coworkers; who could attend to tasks for two hours at a time but would need a break for fifteen minutes (accommodated by routine breaks and lunch); who requires work free from fast pace but is able to meet daily quotas.. (R. 136-38). The VE testified that such an individual could perform work in the national economy, including in the medium, unskilled positions of industrial cleaner (92,000 positions), lab equipment cleaner (50,000 positions), and laundry worker (33,000 positions). (R. 138).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her application date of May 14, 2018. (R. 20). At step two, the ALJ determined that Claimant suffered from the following severe impairments: obesity, hypertension, depressive disorder, a neurodevelopmental disorder, and borderline intellectual functioning. (*Id.*).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (*Id.*). In support of this finding, the ALJ assessed the so-called "paragraph B criteria" and found that Claimant's impairments caused a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. (R. 21-22).

Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [C]laimant retains the capacity to understand, remember, concentrate, persist, and perform simple, routine, repetitive tasks in a low stress environment defined as having few, if any, simple work-related decisions and few, if any, routine changes in the work setting. The claimant should have no interaction with the public and only occasional, routine interaction with supervisors and coworkers. The claimant can attend for two hours at a time but will need a break for fifteen minutes, which can be accommodated by routine breaks and lunch. In addition, the work environment should be free from a fast pace, but the claimant would be able to meet daily quotas.

(R. 24). At step four, the ALJ noted that Claimant had no past relevant work. (R. 30). At step five, the ALJ concluded that a sufficient number of jobs existed in the national economy that Claimant could perform given her age, education, work experience, and RFC, including the representative positions of industrial cleaner, laboratory equipment cleaner, and laundry worker. (R. 31). As such, the ALJ found that Claimant had not been under a disability since May 14, 2018, the date her application was filed. (R. 32).

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III. ANALYSIS

Claimant raises two arguments in support of remand, specifically, that the ALJ: (1) failed to develop a full and fair record regarding Claimant's mental impairments; and (2) failed to adequately accommodate Claimant's moderate limitation in concentration, persistence, and pace. The Court respectfully disagrees on both counts.

#### A. The ALJ met her duty to develop a full and fair record.

Claimant argues that the ALJ erred by failing to properly develop the record because it did not contain the majority of Claimant's mental health counseling notes. (Dckt. #13 at 1). The Commissioner disagrees, arguing that the ALJ sufficiently developed the record, and further noting that even Claimant's counsel informed the ALJ that the medical record was complete. (Dckt. #15 at 1-2). The Court agrees that the ALJ met her duty to develop a full and fair record.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). Although this duty is "heightened" when a claimant appears pro se, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007), it applies "[e]ven when a claimant is represented by counsel," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Failure to fulfill this obligation, especially when a claimant is unassisted by counsel, is "good cause" to remand for the gathering of additional evidence. *Thompson*, 933 F.2d at 586.

However, while an ALJ is under an obligation to develop a full and fair record, "that obligation is not limitless." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citations omitted). Additionally, it is "reasonable for an ALJ to proceed on a record that [claimant's]

11

counsel was satisfied with." *Harris v. Saul*, 835 Fed.Appx. 881, 885 (7th Cir. 2020); *Sharon B. v. Kijakazi*, 4:21-cv-04057-SLD-JEH, 2022 WL 3031745, at *5 (C.D.Ill. Aug. 1, 2022) (same).

Here, the crux of Claimant's argument surrounds her accusation that the ALJ failed to "make a reasonable effort" to obtain Claimant's mental health records. (Dckt. #13 at 7). Notably, the medical record contains notes from only three appointments with social worker Diane Sullivan in November 2017 and July 2018, (R. 457, 468, 480), and yet, at her May 14, 2020 hearing, Claimant testified that she saw Ms. Sullivan every three weeks. (R. 122). When the ALJ acknowledged that the record only contained records from three appointments, Claimant's attorney explained that they had requested mental health records from July 2018 to present, which remained outstanding and "*may* reflect [Claimant's] therapist visits." (R. 123) (emphasis added). Claimant also testified that she had recently switched to a new therapist, (R. 121-22), and that she had telephone visits with her twice a month. (R. 134-35). Despite these representations – and the ALJ holding the record open – Claimant failed to submit any additional medical records related to her mental health visits.

Significantly, in contrast to one of the cases Claimant relies on, the record here was complete and detailed enough for the ALJ to make an RFC determination.[3] Furthermore, the ALJ made a "reasonable effort" to ensure that the record was complete. *Martin v. Astrue*, 345 Fed.Appx. 197, 201 (7th Cir. 2009). First, at the May 14, 2020 hearing, the ALJ granted Claimant's counsel's request to keep the record open for 30 days to secure records from two outstanding sources that were also noted in a May 4, 2020 letter to the ALJ in advance of the

---

[3] *See Amy H. v. Berryhill*, No. 17 cv 4559, 2019 WL 2076325 (N.D.Ill. May 10, 2019). In *Amy H.*, the court ordered a remand to further develop the record, despite claimant's counsel's indication that the record was complete, because the handwritten notes of claimant's sole treating psychiatrist were illegible but "crucial" to claimant's claim. *Id.*, at *5. In this case, Claimant never provided her mental health treatment notes to the ALJ notwithstanding numerous extensions and opportunities to do so.

12

hearing: school records (requested February 4, 2020) and mental health treatment records (for physical and/or mental conditions from July 28, 2018 to present, requested on February 4, 2020). (R. 111, 143, 432-33). Second, on August 19, 2020 following the hearing, the ALJ granted Claimant's counsel's request for an extension of time to August 28, 2020 to submit additional evidence, and the ALJ put Claimant on notice that if the additional evidence was not received, she would issue a decision without it. (R. 435). Next, on August 21, 2020, Claimant's counsel's office again requested to keep the record open for an additional twenty-one days to allow sufficient time to submit the school records. (R. 436).

Finally, on September 4, 2020, a paralegal for Claimant's counsel wrote to the ALJ that the record was left open to obtain school records, the school records were submitted on September 2, 2020, and additionally, that "*[a]ll medical records are in* and the *record is complete*." (R. 437) (emphasis added). Shortly thereafter, and in reliance on Claimant's counsel's acknowledgment "that the record was now complete," the ALJ understandably issued her decision on September 23, 2020. (R. 18, 32). *Harris*, 835 Fed.Appx. at 885 (finding it was reasonable for the ALJ to proceed on a record that claimant's counsel was satisfied with where counsel wrote to the ALJ that the record was complete). Indeed, unlike when a claimant is unrepresented and the ALJ must "supplement the record … [by] contacting treating physicians and medical sources to request additional records and information," *Nelms*, 553 F.3d at 1098, when a claimant is represented by counsel, as Claimant was here, she "is presumed to have made h[er] best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

In addition, Claimant never submitted any additional medical records to the Appeals Council despite being given the opportunity to do so. On October 28, 2020, the Appeals Council granted Claimant's request for more time before acting on her case. (R. 9). In doing so,

13

Claimant was informed she had an extra twenty-five days to submit "additional evidence" that, among other things, was "material," and upon a showing of "good cause" as to why she failed to submit the evidence earlier. (*Id.*). In the Appeals Council order dated January 7, 2021, the Appeals Council noted that the only additional evidence it received was the Request for Review of Hearing Decision/Order (HA 520), received October 21, 2020 (4 pages). (R. 5 (citing R. 301-04)). There is no reference to Claimant submitting – or the Appeals Council receiving – any additional medical records, let alone mental health records.

In sum: the record shows that the Claimant was granted numerous extensions and opportunities –both at the hearing level and the Appeals Council level – to obtain and submit any outstanding mental health records yet she failed to do so. Under these circumstances, the Court finds that the ALJ met her duty to develop a full and fair record.

> **B.** **The manner in which the ALJ accommodated Claimant's moderate limitation in concentration, persistence, and pace in the RFC assessment is supported by substantial evidence.**

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §416.945(a)(1). Claimant argues that the ALJ failed to account for her moderate limitations in concentration, persistence, or maintaining pace ("CPP") in the RFC or the hypothetical to the VE. (Dckt. #13 at 12). The Commissioner responds that substantial evidence supports the RFC and that the Claimant ignored the new regulations for mental impairments that govern this case. (Dckt. #15 at 6 (citing SSA Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016)). The Court agrees that substantial evidence supports the RFC.

Claimant argues that the RFC and hypothetical to the VE did not account for Claimant's moderate limitations in concentration, (Dckt. #13 at 13), but then acknowledged that the ALJ had

in fact limited Claimant while "not[ing] she could still 'understand, remember, concentrate, persist, and perform simple, routine, repetitive tasks.'" (*Id., quoting* R. 24). Claimant additionally recognized that the ALJ "further limited" her to "low stress, simple work, few changes, and to attend tasks for two hours at a time with regular breaks." (*Id.* (citing R. 24)).

In 2017, the Commissioner amended the regulations to offer, for the first time, a definition of "moderate." *Jason B. v. Kijakazi*, No. 22 C 1850, 2023 WL 1992188, at *6 (N.D.Ill. Feb. 14, 2023). The Seventh Circuit – also for the first time – recently reviewed the applicable regulation in *Pavlicek v. Saul*, and explained:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, "fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

994 F.3d 777, 783 (7th Cir. 2021). Here, as in *Pavlicek* and *Jason B.*, the ALJ accommodated Claimant's moderate limitation in CPP, in part, by restricting her to "simple, routine, repetitive tasks," (R. 24), and therefore met the governing standard. In addition, the ALJ's RFC further limited Claimant to a "low stress environment" meaning "few, if any, simple work-related decisions and few, if any, routine changes in the work setting" where she can "attend for two hours at a time but will need a break for fifteen minutes," and the "work environment should be free from a fast pace." (R. 24).

Despite the issuance of the *Pavlicek* decision by the Seventh Circuit over four months prior to Claimant filing her initial brief, she failed to bring this case to the Court's attention and only very briefly addressed it in her reply brief. (Dckt. #16 at 3). Instead, Claimant relies on *LaValley v. Kijakazi*, No. 20 cv 1432 SCD, 2021 WL 5200238, at *6 (E.D.Wis. Nov. 8, 2021), for the proposition that other courts have distinguished *Pavlicek* where "the ALJ does 'not

15

reasonably rely on the consultants' narrative RFC[.]'" (Dckt. #16 at 3). However, in the very next sentence of her brief, Claimant acknowledges that the "finding was the *same* as the state agency review opinion" in her case, yet she finds fault with the ALJ for not discussing it in her assessment of the paragraph B criteria. (Dckt. #16 at 3 (citing R. 21) (emphasis added)).

      Claimant is mistaken. First, the ALJ specifically stated in her evaluation of the paragraph B criteria that she considered, and found persuasive, the State Agency psychological consultants' opinions at the initial and reconsideration levels. (R. 22 (citing R. 172-85, 187-99)). The consultants found no marked limitations in CPP and the other categories, which was consistent with the clinical evidence that no greater limitations were found than were assessed by the ALJ. *Id.* Furthermore, the ALJ adopted the narrative explanation of Claimant's CPP capacities in the RFC by incorporating the consultant's narrative explanation that "claimant can maintain attention for two hours at a time and persist at simple tasks over eight – and forty – hour periods with normal supervision," (R. 196-97), stating Claimant "can perform simple … tasks" and "can attend for two hours at a time but will need a break for fifteen minutes." (R. 24).

      Second, in reaching the conclusion that Claimant has a "moderate" – and not "marked" – limitation in CPP, the ALJ explained that Claimant testified to doing crossword puzzles and reading books, which the ALJ found inconsistent with diminished attention and concentration. (R. 22). In addition, the ALJ observed that Claimant: (1) needs to – and does – take care of herself because she lives with her disabled mother; (2) does her own laundry; (3) helps with dishes; (4) cleans her room; (5) uses a microwave oven; and (6) makes hot dogs on the stove. (*Id.*). The ALJ further noted that Claimant also makes her own doctor's appointments and her own arrangements for transportation. (*Id.*). Finally, the ALJ discussed that upon examination, Claimant was noted to be active, alert, and in no acute distress. (*Id.* (citing R. 514)). The Court

finds that it can follow the ALJ's reasoning and that the ALJ therefore built an accurate and logical bridge and adequately accommodated Claimant's moderate limitation in CPP. Accordingly, the ALJ's RFC analysis is supported by substantial evidence and remand is not warranted on this ground.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the Commissioner's decision, (Dckt. #13), is denied and the Commissioner's motion for summary judgment, (Dckt. #14), is granted. The decision of the Commissioner is affirmed.

**ENTERED:** March 30, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**